MARCEL DANDENEAU, Chief Clerk Wisconsin State Assembly
The Assembly Committee on Organization has requested my opinion on a matter relating to the constitutionality under the Wisconsin Constitution of distributing state aids for school lunches to private schools.
Documents accompanying your request for my opinion disclose the following circumstances. The National School Lunch Act (Pub.L. No. 79-396), as amended, provides for a nonprofit school lunch program to be utilized by both public and private schools. These programs are administered at the federal level by the United States Department of Agriculture (USDA) and at the state level by the Department of Public Instruction (DPI). All schools in the state are eligible for these federal programs which include school lunch, school breakfast, and special milk and donated food distribution. The federal program requires state matching funds which in the 1977-79 biennium equaled about twenty-eight percent of the federal aids received by the state for this purpose. DPI distributes the federal aids to both public and private schools eligible for such aids under the federal law but distributes state matching funds only to public schools. *Page 110 
Your basic question is whether, under the Wisconsin Constitution, there is any prohibition against the state's distribution of these state matching funds to both public and private schools on the same basis and in the same manner that the state distributes the federal funds.
On October 4, 1974, in an opinion to Dr. Barbara Thompson, State Superintendent, Department of Public Instruction, one of my predecessors considered a number of questions dealing with the constitutionality of the state's receipt and distribution of federal funds under the National School Lunch Act. The constitutional provisions involved were the religion clauses of the first amendment of the United States Constitution and Wisconsin Constitution art. 1, sec. 18. That opinion concluded that DPI could implement and distribute funds under the National School Lunch Act without violating those constitutional provisions relating to aid to parochial organizations. 63 Op. Att'y Gen. 473, 487 (1974).
In a very real sense the distinction you raise between the federal aid on the one hand and the state matching funds on the other is artificial. In 63 Op. Att'y Gen. 473, 478 (1974) we said clearly that for the purposes of the application of Wis. Const. art. 1, sec. 18 there is no difference between "federal funds" and "state funds" if funds are actually received and then drawn from the state treasury.
In my October 5, 1979, opinion to you, I noted that the Wisconsin Supreme Court, in examining a statute providing for the advancement of the dental health of the citizens of the state, in light of Wisconsin Constitution art. I, sec. 18, said that the statutory health-oriented effect was secular and the benefit that the religious institution would enjoy as a result of the legislation was merely incidental, and therefore not unconstitutional.
Similarly, the federal school lunch program is health-oriented,i.e., aimed at improving the health of school children and thus secular. With respect to reimbursement for the expense of lunches provided children attending a private or parochial school, any benefit that the religious institution would enjoy as a result of such reimbursement would be incidental, and therefore not unconstitutional.
For this reason and for other reasons set forth in more detail in the opinions referred to above, it is my conclusion that there is no prohibition in the state or federal constitutions which would prevent the *Page 111 
state's distributing its so-called matching funds to both public and private schools eligible for such aids under the federal law.[1]
Enabling legislation, however, would probably be required in order to accomplish this distribution of state matching funds. Section 115.34, Stats., provides:
 (1) The department may contract for the operation and maintenance of school lunch programs and for the distribution, transportation, warehousing, processing and insuring of food products provided by the federal government. The form and specifications of such contracts shall be determined by the department. Amounts remaining unpaid for 60 days or more after they become payable under the terms of such contracts shall be deemed past due and shall be certified to the department of administration on October 1 of each year and included in the next apportionment of state special charges to local units of government as special charges against the school districts and municipalities charged therewith.
 (2) The department shall make payments to school districts for school lunches served to children in the prior year as determined by the state superintendent from the appropriation under s. 20.255 (1) (fe). Payments to school districts shall equal the state's matching obligation under the national school lunch act, P.L. 79-396, as amended. Payments in the current year shall be determined by prorating the state's matching obligation based on the number of school lunches served to children in the prior year.
Subsection (2) of sec. 115.34, Stats., was created essentially in its present form by ch. 224, sec. 107, Laws of 1975, effective May 5, 1976. The phrase "from the appropriation under s. 20.255
(1)(fe)" was added by ch. 29, sec. 1068m, Laws of 1977, effective July 1, 1977. Since its creation, the statute has been interpreted and administered by DPI as only authorizing the payment of these matching funds to "school districts" and that the term "school districts" includes only the public schools and not private schools. This interpretation *Page 112 
is not inconsistent with the definition of school district found in sec. 115.01 (3), Stats., which provides:
 The school district is the territorial unit for school administration. School districts are classed as common school districts, union high school districts, unified school districts, city school districts and school systems organized pursuant to ch. 119. A joint school district is a school district whose territory is not wholly in one municipality.
It is consistent with sec. 115.01 (5), Stats., dealing with the name of a school district and other uses of the phrase in Title XIV. This interpretation also is not inconsistent with definitions used by the Wisconsin Supreme Court. For example, inZawerschnik v. Joint County School Comm., 271 Wis. 416, 429,73 N.W.2d 566 (1955), the court said: "A school district is a quasi-municipal corporation. It is an agent of the state for the purpose of administering the state's system of public education."
It could be argued that sec. 115.34 (2), Stats., is broad enough to permit DPI to determine which private schools receiving federal reimbursement are located in which public school districts, and then make distribution of the private school's share of state matching funds to the school district, directing the school district to pass such funds on to the particular private school indicated. Although this is a possible construction, it seems somewhat improbable that the Legislature would have intended such a result. The federal funds handled by DPI are transmitted directly by DPI to the private schools entitled thereto. They are not passed through the public school districts to the private schools. Thus, it can scarcely be said that the interpretation accorded sec. 115.34 (2), Stats., by DPI is an unreasonable one, in light of the manner in which the federal funds are distributed and the improbability that the Legislature, without more specific language, would have intended a different result, one which would likely involve additional administrative expense, delay, chance for error, and unnecessary duplication of effort.
It has been said that courts sometimes defer to the practical construction accorded an ambiguous statute by the administering agency where the Legislature has acquiesced in that construction. That argument, however, has much less weight when the construction is of recent origin. State ex rel. Strykowski v.Wilkie, 81 Wis.2d 491, 504, *Page 113 261 N.W.2d 434 (1978). In Strykowski, the court found that the Legislature specifically had not acquiesced. by reason of subsequent amendments. That is not the situation here. At least the argument can be made that the practical construction of the administering agency, acquiesced in by the Legislature, is entitled to some weight. However, that weight is lessened because of its relatively recent origin. See Wisconsin Axle Division v.Industrial Comm., 263 Wis. 529, 537b, 57 N.W.2d 696,60 N.W.2d 383 (1953). Thus, even assuming the statute may be construed in two different ways, I cannot conclude that the interpretation adopted by DPI is unreasonable or would work an absurd result.Braun v. Wisconsin Electric Power Co., 6 Wis.2d 262, 268,94 N.W.2d 593 (1959).
It is my further opinion, therefore, that in order for the state (DPI) to disburse the state's matching funds to private as well as public schools, there must be an appropriate amendment of sec. 115.34 (2), Stats., and an amendment of sec. 20.255 (1)(fe). Stats., which currently appropriates money only "for the payment of school lunch aids to school districts."
BCL:JEA
[1] Also see committee for Public Education and ReligiousLiberty et al. v. Edward V. Regan, 48 LW 4168, decided February 20, 1980.