STATE, Respondent, v. GRAF, Appellant.

*No. 700 (1974).  Argued March 4, 1976.—Decided April 7, 1976.*
(Also reported in 240 N. W. 2d 387.)

For the appellant there was a brief and oral argument by *Robert L. Swanson* of Ashland.

For the respondent the cause was argued by *Albert Harriman*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

HANLEY, J. Two issues are presented on this appeal:

1. Is the requirement that the defendant prepay jury fees and other costs as a condition for a jury trial in a civil forfeiture action a violation of the Wisconsin constitutional preservation of the right to a jury trial?

2. Is the retention of such sums after a verdict in defendant's favor a violation of the same right?

The particular proceedings undertaken here are authorized by sec. 345.20 (2), Stats.:

"PROCEDURE. The apprehension of alleged violators of traffic regulations and the trial of forfeiture actions for the violation of traffic regulations shall be governed by ss. 345.21 to 345.53. Where no specific procedure is provided in ss. 345.21 to 345.53, ch. 299 shall apply."

Apparently Graf was subject to only the forfeiture penalty of sec. 346.63 (1), Stats., presumably because it was his first offense under the section. Sec. 346.65 (2). Upon his request for a jury trial, the case was transferred to the circuit court pursuant to sec. 345.43 (1). Although sec. 345.30 provides that the circuit court shall have *no* original jurisdiction over traffic regulations (defined in sec. 345.20 (1), to be forfeiture actions) and thus seemingly would make the proceedings here void for lack of jurisdiction, *State v. Williams* (1932), 209 Wis. 541, 542–545, 245 N. W. 663, statutes must be construed together and harmonized. *Edelman v. State* (1974), 62 Wis. 2d 613, 619, 215 N. W. 2d 386; *State v. Duffy*

(1972), 54 Wis. 2d 61, 64, 194 N. W. 2d 624. A specific statutory provision will normally prevail over a general provision in penal legislation. *Id.* Thus the circuit court had the jurisdiction to consider the forfeiture proceeding and the collateral question of fees.

As a requirement for obtaining a jury trial, sec. 345.43, Stats., demands payment of a fee of $24 for a twelve-man jury "plus the applicable suit tax and clerk's fees." The state segregates these costs from the actual jury fee and confesses error in the retention of these costs after a verdict in favor of Graf. Because these costs in forfeiture jury trial actions are higher than the costs taxed in non-jury civil traffic proceedings, because of the requirement of payment prior to the grant of a jury trial in such matters, and because of the directory nature of the applicable statutes, review of the structure of these costs in relation to jury fees is compelled by Graf's constitutional challenge.

*Suit tax.*

The power to tax suits was extended to the legislature under art. VII of the Wisconsin Constitution:

"**Suit tax.** Section 18. The legislature shall impose a tax on all civil suits commenced or prosecuted in the municipal, inferior or circuit courts, which shall constitute a fund to be applied toward the payment of the salary of judges."

It has been acknowledged that this grant does not extend to criminal cases (including the criminal penalties of the traffic laws) and is a tax initially paid by the plaintiff. 61 Op. Atty. Gen. (1972), 396. A successful plaintiff may, however, recover such costs against his opponent as part of a judgment. *See, e.g.,* secs. 271.04 and 271.10, Stats.

In the civil traffic forfeiture action under consideration here, the state is the plaintiff. The office of the at-

torney general has repeatedly held that the state does not tax itself. 27 Op. Atty. Gen. (1938), 84, 86; 55 Op. Atty. Gen. (1966), 57, 58. Section 345.53, Stats., also reiterates that costs in general may not be taxed against the plaintiff in a traffic regulation action. When no specific procedures in ch. 345 apply, the mechanics of ch. 299 are to be followed. Sec. 345.20 (2). Suit tax for nonjury trials is covered in secs. 299.08, 271.21 (1) (b) and 271.21 (2), while the appropriate suit tax for jury trials is provided in secs. 299.21 (3) (b), 271.21 (1) and 271.21 (2). Jury trial suit tax totals $13, while the tax in nonjury actions is $5. The plaintiff state need not advance this tax, but shall be exempt from payment "until the defendant pays costs pursuant to sec. 299.25." Secs. 271.21 (3) and 299.08.

Since a defendant "pays costs" under sec. 299.25, Stats., only when the judgment is against him, the state agrees that the retention of the prepaid suit tax here is not authorized. Imposition upon a successful defendant is at best only implied by the exemption in favor of the state, and is clearly contrary to the spirit and evident purpose of the constitutional enabling power. *See also: Milwaukee v. Leschke* (1973), 57 Wis. 2d 159, 203 N. W. 2d 669. A suit tax is levied on those who avail themselves of the judicial arm of the state, *i.e.*, who "commence or prosecute" civil suits, rather than on those who have been brought into the forum by the direct undertaking of others.

Insofar as the suit tax is required to be paid prior to the grant of a jury trial, thus enabling retention of such fees against successful jury trial defendants while successful nonjury trial defendants are not so penalized, it would appear that the legislature intended taxation of successful defendants in state cases; it also appears that the "suit tax" so charged is thus a fee for use of the jury. This is so because it is larger, prepaid and retained,

which conditions do not apply to successful defendants in nonjury actions. The state concedes that this is not the intent of the legislature, and offers corrective alternative constructions.

Deposit of the suit tax with the jury fees may be considered as security for payment in case judgment is rendered against the defendant, with the payment returned in case of judgment in his favor. This option has merit as the true intention. The state also submits that the tax need not be prepaid since it is not "applicable" to the defendant until judgment against him. Although this option would also salvage sec. 345.43, Stats., from constitutional attack, it is inapplicable because the language and structure of the statute clearly admit that the sum is to be paid before the assignment of a jury trial will be made.

The conclusion is compelled that the legislature intended prepayment of the suit tax as a security measure. Insofar as the tax in jury suits is prepaid and larger than the tax in nonjury suits, a constitutional question of equal protection would be raised. Legislative classification, however, is presumed to be valid. *State ex rel. Real Estate Examining Board v. Gerhardt* (1968), 39 Wis. 2d 701, 710, 159 N. W. 2d 622. The basic test is "not whether some inequality results from the classification, but whether there exists any reasonable basis to justify the classification." *Omernik v. State* (1974), 64 Wis. 2d 6, 19, 218 N. W. 2d 734. A review of sec. 299.21 (3) (b), Stats., discloses that a jury trial in civil traffic forfeiture actions is equated with a jury trial in small claims actions. Sec. 271.21. Since the disparate length of trial time and preparation on the part of the court and its officers for jury trials is a reasonable distinction, the higher tax is valid. Likewise, the convenience and lesser administrative cost of collection of the jury fee and the potentially applicable suit tax at one time is a reasonable

basis to justify the classification of prepayment. Therefore the suit tax may be collected before granting jury trials, but there is no basis for its retention against the successful defendant.

*Clerk's fees.*

As for the clerk's fee, a similar rationale is involved. The basic fee is $2, sec. 299.08, Stats., with an additional fee of $6 in jury trials, sec. 271.21 (3) (b). Prepayment may be required but retention again is not provided by statute.

*Jury fee.*

Graf concedes that the criminal jury provisions of art. I, sec. 7 of the Wisconsin Constitution do not apply. The proceeding involved here is subject to art. I, sec. 5:

"The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy; but a jury trial may be waived by the parties in all cases in the manner prescribed by law. . . ."

This provision has been construed to mean that the right of trial by jury, as known to the law at the time of the adoption of our constitution, is to be preserved. *Norval v. Rice* (1853), 2 Wis. 17 (*22), 22 (*29).

Although the appellant questions both the prepayment of the jury fee and its retention as a cost after verdict, it is only the latter situation which is repugnant to the law prior to the adoption of our constitution. Each juror was to be paid a dollar per day from the county treasury for his attendance, while upon the trial of each cause the clerk:

". . . shall demand of the party in whose favor verdict shall be given, twenty-five cents for each juror, which shall be paid by him *before* the verdict is declared, and said clerk shall pay the same into the county treasury." Terr. Stats. 1839, page 399.

Similarly, all fees were to be paid by the party requiring the services of one entitled to a fee. These prepayments, however, were costs recovered by the party obtaining a judgment in its favor, Terr. Stats. 1839, p. 387.

In *Reliance Auto Repair Co. v. Nugent* (1915), 159 Wis. 488, 149 N. W. 377, the defendant challenged a statute which required the party demanding a jury to pay into court a jury fee of $12, to be recovered by him as a cost if successful in the action. The court noted the prepaid but recoverable $3 jury fee in cases prior to the enactment of our state constitution and found the new legislation not an invasion of the constitution's mandates:

"Considering the greater purchasing power of money during those earlier years, this sum is not markedly greater than the sum now required to be advanced by the party demanding a jury. It is to be remembered also that under the present law the sum advanced is recovered as costs in case of success in the case." *Id.* at page 490.

Jury fees have been rather uniformly found to be compatible with a right to a jury trial. Annot. 32 A. L. R. 865. A succinct rationale was stated in *Adams v. Corriston* (1862), 7 Minn. 456:

"The Constitution does not guarantee to the citizen the right to litigate without expense, but simply protects him from imposition of such terms as unreasonably and injuriously interfere with his right to a remedy in the law, or impede the due administration of justice."

Graf has raised such an issue mainly through art. I, sec. 9 of the Wisconsin Constitution:

"**Remedy for wrongs.** Section 9. Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; *he ought to obtain justice freely, and without being obliged to purchase it,* completely and without denial, promptly and without delay, comformably to the laws." (Emphasis supplied.)

Our court has explained this prohibition in terms of the arbitrary and injudicious bribery that accompanied the court systems prior to the Magna Carta, from whose principles the wording was derived. *Christianson v. Pioneer Furniture Co.* (1898), 101 Wis. 343, 347, 348, 77 N. W. 174, 77 N. W. 917. The *Reliance Case* specifically acknowleged this provision in upholding the jury fee there under constitutional attack.

Thus it is only art. I, sec. 5, and the early territorial statutes incorporated by implication that are argued in support of either no advance jury fee or a return of the fee. Graf contends that the early explicit statutory provisions on jury fees cannot be altered, such that a $3 (25¢ per juror) fee is a maximum. We do not agree. The constitution was intended to preserve the right to a jury in those actions where it had existed in the law at the time of the constitution. *Mead v. Walker* (1863), 17 Wis. 195. In preserving and securing this right to themselves and their issue, the occupants of the territory of Wisconsin surely did not contemplate that particular enactments regarding the procedure of jury trials were thus being engrafted in the organic law of the state. Undoubtedly they conceived this provision of the constitution as securing their established right to a jury trial in legal actions, a right which at that time bore the coordinate responsibility of being subject to a reasonable share of the expense incurred in obtaining a jury of their fellow citizens. The legislative participation in allocating this fair share preceded the constitution, and the *Reliance Case* reaffirmed that the legislative power and not the particularities of the territorial legislature's procedures were to remain inviolate.

The role of the court normally is to review the jury fee for that excessiveness which would impair the right. *See: LaBowe v. Balthazor* (1923), 180 Wis. 419, 193 N. W. 244, 32 A. L. R. 862. *LaBowe,* decided less than a decade after the *Reliance Case,* struck down a jury fee of $24 and cited *Reliance* as setting an "utmost limit"

of $12. The *LaBowe* court engaged in a weighing process similar to that undertaken in the earlier fee case and concluded that no difference in the purchasing power of money between the territorial age and the time of the case would justify the excessive charge of $24 "at the present time." The appellant would object to the use of this inflationary measuring technique because of its imprecision. In preserving the right to a jury trial, our constitution did not set dollar limits on its procedural aspects, as did the Seventh Amendment to the United States Constitution in preserving the civil jury only when at least $20 is in controversy. Although comparison of relative purchasing power of money may be indefinite, it does serve as one gauge of when a legislatively apportioned share is excessive and thus violative of the right to a jury trial by inhibiting such a choice. Another relevant measure is the relation between the fee and the compensation of the jury. A jury fee prior to our constitution comprised one-quarter of a day's compensation for the jury. A fee of $24 falls into the same ratio, when jury compensation may range from $4 to $16 per diem. Sec. 255.25, Stats. Excessiveness has not been shown. Thus the advancement of the $24 fee as a condition of a jury trial here is not repugnant to the constitution.

As previously noted, the state concedes that the suit tax and clerk's fee amounting to $21 should be returned. As to the jury fee, the state argues that it may be retained even if the defendant obtains a judgment in his favor. Apparently the view is maintained that the defendant has received the services of the government in procuring a jury and should thus bear a share of the cost.

It is the commencement of a judicial proceeding, not the particular attitude of the defendant, that ultimately produces the jury and its expense, and while there exists a basis for compelling the unsuccessful defendant to share the expense because of his unnecessary invocation of the right, there is nothing more than a chilling effect on the

right when the fee is imposed on all who invoke the review of a jury in their defense. Jury fees were a cost assumed by the unsuccessful prosecution in criminal and quasi-criminal actions prior to our statehood, and this practice is an aspect of the jury right that must remain inviolate. The unconstitutional retention here, as in the case of the costs, also is the product of the unjustified implication that the fees are to be retained because the state may not be taxed costs on its unsuccessful case.

We conclude that the prepayment of jury fees and other costs as a condition for a jury trial here was not a violation of the Wisconsin Constitution's preservation of the right to a jury trial. However, the retention of such fees and costs after a verdict in the defendant's favor is violative of such right.

*By the Court.*—Order reversed and cause remanded with directions to order return of the $45 payment.