COUNTY OF PORTAGE, Plaintiff-Respondent-Petitioner,

v.

Robert J. STEINPREIS, Defendant-Appellant.
[Case No. 80–037.]

COUNTY OF PORTAGE, Plaintiff-Respondent-Petitioner,

v.

Robert J. STEINPREIS, Defendant-Appellant.
[Case No. 80–038.]

Supreme Court

*Submitted on briefs September 10, 1981.— Decided November 3, 1981.*

(Also reported in 312 N.W.2d 731.)

For the petitioner the cause was submitted on a brief (in this court) by *Miriam J. Rohrer*, of Stevens Point, acting assistant district attorney.

For the defendant-appellant the cause was submitted on a brief (in court of appeals) by *Robert J. Steinpreis* of Waupaca.

COFFEY, J. This is a review of a decision of the court of appeals reversing judgments of the Circuit Court for Portage County, HON. JAMES H. LEVI, presiding.[1] These judgments were entered after the trial court denied the motion of the defendant-appellant, Robert J. Steinpreis, to declare sec. 299.21, Stats. 1977,[2] unconstitutional in that it required the prepayment of a jury fee and costs upon the filing of a demand for a jury trial in a small claims action. The court of appeals reversed the trial court and found the statute unconstitutional holding that the required prepayment of the jury fee violated the equal protection clauses of both the federal and state constitutions.

The county of Portage, plaintiff-respondent-petitioner, (hereinafter county), filed two small claims complaints,[3]

---

[1] The actions in which the judgments were entered were consolidated at trial and on appeal.

[2] It should be noted that four days after the filing of these actions, ch. 299, Stats. 1977, was renumbered ch. 799. The renumbering, however, did not affect the substantive provisions of ch. 299 involved in this case. Under Wisconsin case law, changes in procedural statutes generally apply to civil actions retrospectively. *State ex rel. Sowle v. Brittich*, 7 Wis. 2d 353, 361, 96 N.W.2d 337 (1959). In light of this rule, the renumbered statute sections are applicable to this appeal. Since the parties have framed this case in terms of the former statute sections and because the renumbering did not affect the substantive provisions of the statute, we will refer to the provisions under the former section numbers.

[3] The county originally filed complaints to recover the amount due on June 18, 1979. Steinpreis moved the court to dismiss these

both alleging that Steinpreis owed $34.25 plus filing fees for separate ambulance services provided by the county. (Total claim: $83.50). Steinpreis filed an answer and denied he owed the money and requested a jury trial. Shortly after filing his answer, Steinpreis received a letter from the Portage county clerk of courts demanding à $43 payment to the court to cover the suit tax, clerk's fee and jury fee ($24) due, pursuant to sec. 299.21, Stats. 1977.[4] Steinpreis refused to pay the required fees pending appeal, stating that he feared that payment of the same would make his challenge to the statute moot. Steinpreis then filed a motion challenging the constitutionality of sec. 299.21, Stats. He alleged that it denied either the right to a jury trial under the Wisconsin Constitution, art. I, sec. 5 and/or equal protection as guaranteed by both the federal and state constitutions. After argument, the trial court denied the motion. At trial he offered no defense to the small claims complaints and agreed to the immediate entry of a judgment in order to

complaints for improper venue on August 2, 1979. In response to this motion, "amended" complaints were filed by the county on October 2, 1979. Service of the second set of complaints was made in such a manner as to make venue in Portage county proper. These "amended" complaints form the basis for this action, although reference to them as "amended" has been deleted as it is not relevant to this appeal.

[4] Under the assessment made by the county, an amount of $19 was required as a suit tax and additional clerk's fee. We note that generally under the provisions of sec. 299.21(3)(c), Stats., this amount should have been $13, $7 as an additional suit tax and a $6 clerk's fee. It is possible that the additional $6 assessment represents an additional clerk's fee required because this case actually involves two small claims actions. Since Steinpreis never paid the fee in question, the question of the proper amount due is not necessary to this opinion. We only note the discrepancy to avoid inadvertently approving what may be an incorrect assessment.

facilitate an appeal. An amended judgment in favor of the county was entered on December 3, 1979.[5]

The court of appeals reversed the trial court's finding of constitutionality and held that the jury fee required under sec. 299.21(3)(c), Stats., was a denial of equal protection and thus unconstitutional. The court reasoned that since no jury fee is required if a jury demand is made in a chs. 801–807 proceeding and since they could find no rational basis for this difference in the procedures of chs. 801 to 807 and those of ch. 299, there was a denial of equal protection. The court of appeals did not reach the remaining issues.

*Issues*

1. Does sec. 299.21(3), Stats 1977, violate the right to a trial by jury protected under art. I, sec. 5 of the Wisconsin Constitution?

2. Does sec. 299.21(3), Stats. 1977, constitute a "purchase of justice" as prohibited under art. I, sec. 9 of the Wisconsin Constitution?

3. Does sec. 299.21(3), Stats. 1977, constitute a denial of the equal protection of law as guaranteed under both the Wisconsin and Federal Constitutions?

4. Is the challenge to the constitutionality of the fees set out in sec. 299.21(3), Stats. 1977, moot?

---

[5] The judgment entered on December 3, 1979, is denominated an "amended" judgment. A judgment was initially entered on November 26, 1979. Steinpreis moved the court to correct this judgment on November 29, 1979, as it improperly stated the date of the motion hearing and incorrectly summarized Steinpreis' position as to the entry of judgment against him. The trial court apparently agreed with the errors alleged in the original judgment and thus filed an amended judgment on December 3, 1979, from which the petitioner appeals.

*Right to a Jury Trial*

The Wisconsin Constitution, art. I, sec. 5, preserves the right to a jury trial in civil actions as follows:

> **Trial by jury; verdict in civil cases.** SECTION 5. [As amended Nov. 1922] The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy; but a jury trial may be waived by the parties in all cases in the manner prescribed by law. . . ."

"This provision has been construed to mean that the right of trial by jury, as known to the law at the time of the adoption of our constitution, is to be preserved." *State v. Graf*, 72 Wis. 2d 179, 184, 240 N.W.2d 387 (1976). *See also: La Bowe v. Balthazor*, 180 Wis. 419, 420, 193 N.W. 244 (1923); *Norval v. Rice*, 2 Wis. 17 (*22), 22 (*29) (1853). Under the territorial statutes of Wisconsin, a party recovering a jury verdict was required to pay a fee into the court before the court's declaration of the verdict.[6]

"Undoubtedly they [the occupants of the territory of Wisconsin] conceived this provision of the constitution as securing their established right to a jury trial in legal actions, a right which at that time bore the coordinate responsibility of being subject to a reasonable share of the expense incurred in obtaining a jury of their fellow citizens. . . ." *State v. Graf*, 72 Wis. 2d 179, 186, 240 N.W.2d 387 (1976).

As early as 1915 this court approved of the requirement of a jury fee holding that it doesn't infringe upon the constitutional guarantee of a jury trial. *Reliance*

---

[6] ". . . Upon the trial of each cause in the district court, the clerk shall demand of the party in whose favor verdict shall be given, twenty-five cents for each juror, which shall be paid by him before the verdict is declared, and said clerk shall pay the same into the county treasury." Territorial Statutes 1839 at 399, sec. 23.

*Auto Repair v. Nugent,* 159 Wis. 488, 490, 149 N.W. 377 (1915). This court stated:

"The requirement that the party demanding a jury shall pay into court a jury fee of $12, to be recovered by him in the cost bill if successful in the action, is not an unreasonable regulation of the right, nor is it an invasion of sec. 9, art. I, of the constitution, which provides that 'every person . . . ought to obtain justice freely, and without being obliged to purchase it.'" *Id.* at 490.

Since that time, this court has consistently held that a reasonable jury fee is constitutional. *La Bowe v. Balthazor, supra* at 422; *State v. Graf, supra* at 185.

Our interpretation of the right to a jury trial is consistent with decisions of other jurisdictions which have almost uniformly found reasonable jury fees to be compatible with the right to a trial by jury. *See:* Anno. 32 ALR 865. In *State v. Graf, supra,* we quoted the following language as providing a succinct rationale for the allowance of such fees:

"The Constitution does not guarantee to the citizen the right to litigate without expense, but simply protects him from imposition of such terms as unreasonably and injuriously interfere with his right to a remedy in the law, or impede the due administration of justice." quoting *Adams v. Corriston,* 7 Minn. 456 (1862). *Id.* at 185.

Although the Wisconsin Constitution establishes a right to a tuition free public education (art. X, sec. 3), we have held that the public schools may charge fees for the use of books and items of a similar nature without violating that right. *Board of Education v. Sinclair,* 65 Wis. 2d 179, 182, 222 N.W.2d 143 (1974). Our holding that the requirement of a reasonable jury fee does not violate the right to a jury trial likewise is consistent with that decision.

Many additional costs are incurred when a jury trial is demanded. A share of these costs must be paid by the

litigants or all must be paid with government tax revenues. It is only fair that the litigants bear a reasonable portion of the expense incurred due to the exercise of their rights unless determined by the court to be indigent. One should not be entitled to exercise his constitutionally protected rights at the expense of others if financially able to bear his share of the costs. One's exercise of constitutional rights is not unduly burdened by the imposition of such reasonable costs. Surely one exercising the freedom of speech is not constitutionally entitled to the free use of printing presses or communications media. Similarly, one demanding a jury trial is not entitled to avoid paying any of the costs of the jury.

The general constitutionality of jury fees such as those required under sec. 299.21(3), Stats. 1977, is clear under the decisions discussed above. This court, however, has recognized that there are limits beyond which the legislature may not go in imposing such fees. *La Bowe v. Balthazor, supra* at 422. That limit has been described as the point at which the fee becomes "an unreasonable regulation of the right." *Reliance Auto Repair Co. v. Nugent, supra* at 490. Because of this limit, the role of a court when a jury fee is challenged "is to review the fee for that excessiveness which would impair the right." *State v. Graf, supra* at 186. With this standard in mind, we analyze the jury fee imposed under sec. 299.21(3), Stats. 1977.

Of the $43 court fee demanded, $19 represented a suit tax and clerk's fee and the additional $24 constituted a jury fee. That assessment was made under sec. 299.21 (3)(c), Stats. 1977:

"(c) The fee for a jury is $24, plus an additional amount as suit tax which will result in a suit tax payment of the amount which would have been payable had the action been commenced under chs. 801 to 807 and additional clerk's fees of $6."[7]

---

[7] *See* fn. 4 as to the computation of the fee.

By the terms of the statute itself, it is obvious that the additional suit tax and clerk's fee are merely intended as a cost assessment equivalent to that which would be required in an action initiated under chs. 801 through 807, Stats. Under sec. 299.21 (4), Stats. 1977, the small claims action is treated as a chs. 801 to 807 action once a jury demand is made. After the jury demand is made, the action becomes the same as one commenced under chs. 801 to 807, and, therefore, it is reasonable that similar fees be paid to the court. The clerk's fee imposed in a chs. 801 to 807 proceeding has remained the same since 1953 and the suit tax has not changed since 1969.[8] In light of the fact that these fees have remained constant while the costs of running a courtroom have soared, they cannot be considered excessive, much less unreasonable. The fees are insignificant when compared to the actual cost of the courtroom procedures. We hold that the additional suit tax and clerk's fee imposed under sec. 299.21 (3) (c), Stats. 1977, is reasonable and not excessive and, therefore, does not impair the right to a jury trial.

Before completing our discussion of the suit tax and the clerk's fee imposed under sec. 299.21 (3) (c), it should be noted that sec. 814.29, Stats., allows for the waiver of these assessments should the court determine that the litigant is indigent. The court of appeals noted that since defendant Steinpreis failed to file an affidavit of indigency, he had no standing to challenge the assessment of the suit tax and clerk's fee. As we have addressed the question of the constitutionality of the fees because of its impact on the statutory small claims procedure, it is unnecessary to further explore the question of Steinpreis' standing to challenge these fees.

Sec. 299.21 (3) (c), Stats., in addition to the suit tax and clerk's fee, imposes a $24 charge upon the party de-

[8] Sec. 59.42, Stats. 1953, and sec. 271.21, Stats. 1969, respectively.

manding a jury. The question of the reasonableness of a $24 jury fee was addressed in *State v. Graf, supra.* In finding that fee reasonable and not excessive, this court stated:

"In preserving the right to a jury trial, our constitution did not set dollar limits on its procedural aspects, as did the Seventh Amendment to the United States Constitution in preserving the civil jury only when at least $20 is in controversy. Although comparison of relative purchasing power of money may be indefinite, it does serve as one gauge of when a legislatively apportioned share is excessive and thus violative of the right to a jury trial by inhibiting such a choice. Another relevant measure is the relation between the fee and the compensation of the jury. A jury fee prior to our constitution comprised one-quarter of a day's compensation for the jury. A fee of $24 falls into the same ratio, when jury compensation may range from $4 to $16 per diem. Sec. 255.25, Stats. Excessiveness has not been shown. Thus the advancement of the $24 fee as a condition of a jury trial here is not repugnant to the constitution." *Id.* at 187.

The jury fee considered in that case was required under the provisions of sec. 345.43, Stats., and applied to civil forfeiture actions arising out of the violation of state traffic regulations:

"A review of sec. 299.21(3)(b), Stats., discloses that a jury trial in civil forfeiture actions is equated with a jury trial in small claims actions. Sec. 271.21, Stats." *State v. Graf, supra* at 183.

We find that the reasoning of the *Graf* case set out above is equally applicable to the case at bar. A jury fee which is reasonable in a traffic forfeiture action is also appropriate in a small claims action as the added expense of the jury trial is the same in each.

The statutory jury fee assessed is certainly reasonable when one considers the actual costs of the courtroom

proceedings. Court personnel, judge, jury, clerk, court reporter, paper, light and heat are among the many expenses involved in running a courtroom and inflation is constantly driving these costs upwards. When a jury trial is demanded in a small claims action, more court time is required and hence costs are increased. In our litigious society, it is only fair that those who avail themselves of the courts bear a portion of the costs, when financially able. In addition, assessing these costs helps to insure the sincerity of the litigant's jury demand. Thus, we hold that the $24 jury fee imposed under sec. 299.21(3)(c), Stats., is reasonable and not excessive and does not violate the right to a jury trial.

### Purchase of Justice

Steinpreis argues that the jury fee required under sec. 299.21(3)(c), Stats. 1977, constitutes a "purchase of justice" as prohibited by the Wisconsin Constitution, art. I, sec. 9. That section of our constitution guarantees every person a remedy for wrongs in the manner set out below:

"**Remedy for wrongs.** SECTION 9. Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws."

Appellants in *State v. Graf, supra,* similarly contended that the jury fee constituted a "purchase of justice." In responding to this argument, the court made the following statement:

"Our court has explained this prohibition in terms of the arbitrary and injudicious bribery that accompanied the court systems prior to the Magna Carta, from whose

principles the wording was derived. *Christianson v. Pioneer Furniture Co.* (1898), 101 Wis. 343, 347, 348, 77 N.W. 174, 77 N.W. 917. The *Reliance Case* specifically acknowledged this provision in upholding the jury fee there under constitutional attack." *Id.* at 186.

The $24 jury fee involved in this case is in no way similar to the kind of "arbitrary bribery" the constitutional provision was intended to prohibit. This court in *Reliance Auto Repair Co. v. Nugent, supra,* specifically rejected the argument that the jury fee constituted a "purchase of justice" as prohibited under the Wisconsin Constitution. *Id.* at 490.[9]

The $24 jury fee assessed under sec. 299.21(3)(c), Stats., is not a "purchase of justice" but rather an allocation of a portion of the high costs of running our courts to the litigants. The fee is miniscule in proportion to these costs. Although inflation and increasing caseloads have caused the courtroom costs to soar, the jury fee assessed in small claims actions has remained the same for twenty years. Sec. 254.14, Stats. 1961.

In light of our prior holdings and our determination that the fees set out in sec. 299.21(3)(c), Stats., are not excessive, we conclude that the jury fees involved in this case do not constitute a "purchase of justice."

*Equal Protection*

The court of appeals reversed the judgment of the trial court based upon its holding that the jury fee required in small claims actions violated the equal protection clauses of both the federal and state constitutions. The court stated it could find "no legitimate state objective which is rationally served by the legislature's classifica-

---

[9] *See* language from *Reliance Auto Repair Co. v. Nugent,* 159 Wis. 488, 149 N.W. 377 (1915), quoted at p. 472 of this decision.

tion."[10] We believe the classification referred to by the appellate court is the difference in the fees required when a small claims litigant demands a jury trial as opposed to those applicable to a party making the same demand under chs. 801 to 807, Stats.

The constitutional question presented in this case is whether the difference in the jury fees required in small claims actions as opposed to those brought under chs. 801 to 807, Stats., is violative of the equal protection clauses of both the United States and Wisconsin Constitutions.[11]

In *State ex rel. Strykowski v. Wilkie*, 81 Wis. 2d 491, 261 N.W.2d 434 (1978), the court reiterated the well-established rule that a party who challenges a statutory classification carries a heavy burden of persuasion.

" '. . . It is not enough that respondent establish doubt as to the act's constitutionality nor is it sufficient that respondent establish the unconstitutionality of the act as a probability. Unconstitutionality of the act must be demonstrated beyond a reasonable doubt. Every presumption must be indulged to sustain the law if at all possible and, wherever doubt exists as to a legislative enactment's constitutionality, it must be resolved in favor of constitutionality. This court has often affirmed the well-established presumption of constitutionality that attaches itself to all legislative acts . . . .' quoting *State ex rel. Hammermill Co. v. La Plante*, 58 Wis. 2d 32, 46, 205 N.W.2d 784 (1973)." *Id.* at 506.

[10] *County of Portage v. Steinpreis*, Unpublished Opinion (Ct. App.) June 28, 1980, Slip Op. at 7.

[11] Art. I, sec. 1 of the Wisconsin Constitution has consistently been interpreted as providing the protections against unequal treatment by the state guaranteed by the equal protection clause of the United States Constitution. *Sambs v. City of Brookfield*, 97 Wis. 2d 356, 361, fn. 5, 293 N.W.2d 504 (1980). Because of this similarity, the same legal analysis will be sufficient to test the validity of the statute under the guarantees of each constitution.

The appropriate test for review of the classification of small claims litigants and those proceeding under chs. 801 to 807, Stats., is whether there is a rational basis for the classification.[12]

The legislature has not set forth in detail its rationale for imposing a jury fee in small claims actions where a jury trial is demanded. This lack of a stated rationale, however, does not foreclose this court's search for a rational basis for the legislation:

"However, it is the court's obligation to locate or to construct, if possible, a rationale that might have influenced the legislature and that reasonably upholds the legislative determination. The rationale which the court locates or constructs is not likely to be indisputable. But it is not our task to determine the wisdom of the rationale or the legislation. The legislature assays the data available and decides the course to follow." *Sambs v. City of Brookfield*, 97 Wis. 2d 356, 371, 293 N.W.2d 504 (1980).

A separate statutory procedure for the handling of small claims was first adopted by the Wisconsin legislature 35 years ago. Ch. 212, Laws of 1949. At that time, a legal commentator noted that among the purposes of the small claims procedure was the need for an inexpen-

---

[12] The "rational basis" test, *McGowan v. Maryland*, 366 U.S. 420, 426 (1961), is applicable to this equal protection challenge rather than the "strict scrutiny" test. *Roe v. Wade*, 410 U.S. 133, 155 (1973). The "strict scrutiny" standard applies only to classifications involving a suspect category or a fundamental right. *State ex rel. Strykowski v. Wilkie*, 81 Wis. 2d 491, 506, 261 N.W. 2d 434 (1978). In light of our finding that the jury fees involved in this case are constitutionally permissible, it is clear that the case does not involve an impingement upon a fundamental right. Steinpreis does not argue that this case involves a suspect category. Indeed, such an argument would not appear to be correct in light of our prior rejection of the argument that statutory classifications based on "economic conditions" should be considered suspect. *State ex rel. Strykowski v. Wilkie, supra* at 507.

sive and speedy method of handling these disputes.[13] There was a need to both bring the costs of an action into proportion with the amount involved in the cases, and to allow for a summary disposition of small claims, exclusive of eviction actions. *Id.* at 366, 372.

It seems evident that one of the ways in which the legislature intended to hold the cost of small claim actions to a minimum was to allocate the court costs to a party in rough proportion to the expense of the procedures involved in resolving the dispute. The additional cost of jurors could be assessed separately if used in the specific case. In this way, the initial cost of bringing a small claims action would be kept to a minimum as it did not have to include the jury costs if none was demanded.

The fact that a fair allocation of the court's expenses was the basis for the separate assessment of the jury fee can be logically inferred from the fact that under an earlier version of the small claims procedures (now ch. 799, Stats.) a different jury fee was assessed depending on whether a six or twelve person jury was requested. *See:* sec. 299.21(3)(b), Stats. 1967.

This court recognized the validity of the rationale discussed above in *State v. Graf, supra* at 183. In that case the defendant argued that the assessment of an additional suit tax when a party requests a jury trial violated the equal protection clause. In rejecting this argument, the court found that the added expense of a jury trial provided a "rational basis" for the additional tax.

"The basic test is 'not whether some inequality results from the classification, but whether there exists any reasonable basis to justify the classification.' *Omernik v. State* (1974), 64 Wis. 2d 6, 19, 218 N.W.2d 734. . . . Since the disparate length of trial time and preparation on the part of the court and its officers for jury trials is

[13] Note—*Uniform Small Claims Act,* 1950 Wisconsin L. Rev., 363, 365, 372 (1950).

a reasonable distinction, the higher tax is valid." *State v. Graf, supra* at 183.

The imposition of a jury fee also reasonably served the legislature's objective of providing a summary procedure for disposing of small claims, exclusive of eviction actions. A jury trial increases the time required to resolve a small claims dispute. It requires that valuable court time be spent impaneling, arguing, instructing and waiting for the jury verdict. The procedures for resolving evidentiary questions and handling witnesses are also more time consuming than a trial before a seasoned and experienced judge.

Considering the adverse affect of a jury demand upon the summary nature of the small claims procedure, the conclusion is compelled that the legislature intended the prepaid jury fee as a means of insuring the sincerity of the party requesting a jury trial. It discourages jury demands in actions where a last minute settlement is anticipated. The fee also discourages jury demands made in bad faith to delay the litigation or to increase the financial burden on the other party. The added burden includes increased witness fees and inconvenience to the parties and litigants, including lost time from work. Thus, by helping to insure the sincerity of the jury demand, the fee served the legislative objective of providing a summary procedure for resolving small claims, exclusive of eviction actions.

The preceding discussion demonstrates that the legislature can and did validly allocate the expense of small claims actions in a manner consistent with the objectives of those procedures. The constitutional challenge raised in this case, however, is not only to the allocation of fees within small claims procedures but to the difference between the fees assessed upon the demand for a jury in small claims actions as opposed to those assessed in an action brought under chs. 801 to 807, Stats. When a party brings an action under chs. 801 to 807, he is

initially required to pay a clerk's fee and suit tax considerably greater than that required to bring a small claims action, although there are no additional fees required if a jury is demanded.[14]

Since the legislature is entitled to allocate the costs of small claims actions in a manner consistent with the goals of that procedure, the legislature also is entitled to allocate the costs of actions brought under chs. 801 to 807 in a manner consistent with the different purposes of those procedures. Whereas, the small claims procedures are intended to provide for the summary, speedy and inexpensive resolution of disputes, exclusive of eviction actions, the procedures of chs. 801 to 807 are intended to provide for a more complete resolution of complex cases. The stricter rules of pleading and extensive provisions for discovery[15] demonstrate the distinct objectives of the chs. 801 to 807 procedures. The different nature of the actions brought under chs. 801 to 807 and the distinct objectives of those procedures provide a "rational basis" for the difference in the fee structure.

Unlike small claims actions, cases brought under chs. 801 to 807 contain more complex legal and evidentiary questions. They range from highly technical products liability suits to antitrust litigation, from reviews of

---

[14] A total fee of $19 is due as opposed to the $7 fee in a small claims proceeding.

[15] It should be noted that the small claims procedures do allow for use of the ch. 804 discovery procedures (sec. 799.04, Stats.). These procedures are used in the rare and exceptional case, the frequency of which is probably no more than 1 in 1000. The use of discovery procedures is generally inconsistent with the small claims procedures of ch. 799 which allow for trial on the return date, sec. 799.21(2), and immediate rendering of a decision, sec. 799.215. In addition, it can be noted that it is standard practice among our courts that once discovery procedures are used in a small claims action, the case is transferred to the court's calendar for chs. 801 to 807 actions and no longer is disposed of summarily.

administrative decisions to multi-million dollar contract issues and from legal and medical malpractice actions to disputes over property rights. Resolution of these actions requires much more court time than that required in a summary trial. The procedures governing these actions were not meant to be summary in nature; rather, they provide for discovery, motions before and after verdict, pretrial conferences and other proceedings which absorb a large amount of the valuable court time. Trials can last as long as several weeks or months, even when tried to the court.

Since a chs. 801 to 807 action is not meant to be summary in nature, a jury demand does not change the procedures applicable to the action in the manner that a jury demand does in small claims actions. It was reasonable, therefore, for the legislature to determine that a separate jury fee was not necessary in a chs. 801 to 807 action. The objective of a chs. 801 to 807 action is not to provide access to the courts at a minute cost and, therefore, the legislature could reasonably determine that the cost of juries could be borne by all litigants through a single larger fee. When taking into consideration the greater amounts of time and money that a party invests in bringing a chs. 801 to 807 action, exclusive of eviction actions, it is also reasonable for the legislature to determine that a jury fee was not necessary as a means of guaranteeing the sincerity of the party's jury demand.

The court of appeals could find no rational basis for the difference in the fees required since the small claims action is treated as one initially commenced as a proceeding under chs. 801 to 807, Stats., after the filing of the jury demand. This view of the issue is too narrow. It fails to consider the issue in terms of the fair allocation of costs among the vast number of cases brought under either the small claims procedures or chs. 801 to 807 procedures.

The jury fee challenged in this case allocates the cost of services rendered by the government through its court system partially to those who derive the benefit therefrom. Gone are the days when we can demand services from our government without concern for how those services will be financed. The costs of these services to a degree are, and should be, borne by all of us. It is only fair, however, that some part of those costs are borne by the persons who directly benefit from those services. Reasonable assessments for government services are both fair and necessary.

The difference in the nature of the actions brought under the small claims procedures (ch. 799, Stats.), and the objective of providing a summary disposition of small claims at a minimal cost provide a rational basis for the fee structure applicable to small claims procedures as distinguished from chs. 801 to 807 actions. We hold the requirement that small claims litigants pay a fee upon demand for a jury trial does not violate the equal protection clause of either the federal or state constitutions.

*Mootness*

In light of our determination of the preceding issues, it is not necessary to address the question of mootness as raised by the county.

*By the Court.*—The decision of the court of appeals is reversed.

SHIRLEY S. ABRAHAMSON, J. *(dissenting).* I dissent because I conclude that sec. 799.21(3), Stats.,[1]

---

[1] Ch. 299 has been renumbered ch. 799. I refer to ch. 799 of the 1979–80 statutes, instead of to ch. 299 of the 1977 statutes as does the majority.

Sec. 799.21(3), Stats. 1979–80, provides:

"(3) TRIAL BY JURY. (a) Any party may, upon payment of the fees specified in par. (c), file a written demand for trial by

requiring a party in a small claims action to pay jury fees in advance of trial—when jury fees are not required to be paid in civil actions brought pursuant to chs. 801 to 807, Stats.[2]—constitutes a denial of constitutional rights.

jury. If no party demands a trial by jury, the right to trial by jury is waived forever. In eviction actions, the demand shall be filed at or before the time of joinder of issue; in all other actions within 20 days thereafter.

"(b) In counties establishing at least one part-time or full-time court commissioner position under s. 757.68(1)(b), except in eviction actions which shall be governed by par. (a), demand for trial by jury shall be made at the time a demand for trial is filed. If the party requesting a trial does not request a jury trial, any other party may request a jury trial by filing such request, with the court and mailing copies to all other parties within 15 days from the date of mailing of the demand for trial or the date on which personal notice of demand is given, whichever is applicable. If no party demands a trial by jury, the right to trial by jury is waived forever. The fees specified in par. (c) shall be paid when the demand for a trial by jury is filed.

"(c) The fee for a jury is $24, plus an additional amount as suit tax which will result in a suit tax payment of the amount which would have been payable had the action been commenced under chs. 801 to 807 and additional clerk's fees of $6."

[2] While there are jury fees in certain non-small claims actions, *see* sec. 800.04(1)(d), Stats. 1979–80 (municipal court jury fees) and sec. 345.43(1), Stats. 1979–80 (traffic case jury fees), as the majority states at page 482, "there are no additional fees required if a jury is demanded" in a chs. 801–807 action.

A litigant in a small claims or other action may pay the cost of one day's jury fees under sec. 814.51, Stats. 1979–80, which provides:

"814.51 **Jury fees; discretion of court.** The court shall have discretionary authority in any civil or criminal action or proceeding triable by jury to assess the entire cost of one day's juror fees for a jury, including all mileage costs, against either the plaintiff or defendant or to divide the cost and assess the cost against both plaintiff and defendant, or additional parties plaintiff or defendant, if a jury demand has been made in any case and if a jury demand is later withdrawn within 2 business days prior to the time set by the court for the commencement of the

When a litigant in a small claims action demands a trial by jury, the statutes provide that the small claims litigants shall proceed as if the action had originally been begun as a chs. 801–807 proceeding. Sec. 799.21 (4), Stats. 1979–80. Thus sec. 799.21(3)(c) requires a small claims litigant requesting a jury to pay an additional clerk's fee of $6 and an additional suit tax in an amount that would render the total suit tax paid equal to that required under chs. 801–807. Although no jury fees are required of a litigant who initiates a suit pursuant to chs. 801–807, Stats. 1979–80, sec. 799.21(3)(a) requires the small claims litigant to pay a $24 jury fee.

I assume, arguendo, that the majority is correct in stating that "the appropriate test for review of the classification of small claims litigants and those proceeding under chs. 801–807, Stats., is whether there is a rational basis for the classification." *Supra,* p. 479. I recognize, however, that the right to a jury trial is guaranteed by the Wisconsin Constitution for "all cases at law without regard to the amount in controversy" and that I might take the position that the strict scrutiny test applies. I do not analyze the legislation to determine if the legislature has a "compelling justification," because I conclude that the classification in the instant case does not satisfy the less rigorous rational basis test.[3]

trial. The party assessed shall be required to make payment to the clerk of circuit court within a prescribed period and the payment thereof shall be enforced by contempt proceedings."

[3] That the right to a jury can be regulated, however, does not mean, as the majority would have us believe, that it is not a fundamental right or that the strict scrutiny test, *i.e.* that a classification may be justified only by strong governmental interests, does not apply. Tribe, *American Constitutional Law* sec. 16–6 (1978).

It should also be noted, however, that the seventh amendment federal right to jury trial differs from that guaranteed by the Wisconsin Constitution and that the federal right to a jury trial in

I, like the majority, recognize that statutes are entitled to a presumption of constitutionality and that the burden is on the party challenging a legislative classification to demonstrate that it does not bear a rational relationship to a legitimate state purpose. The equal protection clause does not authorize this court to substitute its view of public policy for that of the elected members of the legislature, but it does require the court to probe beneath the claims of the government to determine if the constitutional "requirement of some rationality in the nature of the class singled out" has been met. *James v. Strange,* 407 U.S. 128, 140 (1972). As the United States Supreme Court has said, "Equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made." *Baxtrom v. Herold,* 383 U.S. 107, 111 (1966). The rational basis standard for reviewing legislative classification is not "a toothless one." *Schweiker v. Wilson,* 450 U.S. 221, 67 L. Ed. 186, 198 (1981) ; *United States Railroad Retirement Board v. Fritz,* 449 U.S. 166, 184 (1980) (Brennan, J., dissenting) ; *Mathews v. Lucas,* 427 U.S. 495, 510 (1976).[4]

civil actions is not considered "fundamental" with respect to the states. *See Palko v. Connecticut,* 302 U.S. 319, 324 (1937); *Richie v. Badger State Mutual Casualty Co.,* 22 Wis. 2d 133, 143, 125 N.W.2d 381 (1963).

[4] This court and the United States Supreme Court have used numerous formulations for the rational basis test and have afforded different degrees of deference to the legislature. *See U.S. Railroad Retirement v. Fritz,* 449 U.S. 166 (1981); *Schweiker v. Wilson,* 450 U.S. 221, 67 L. Ed. 2d 186, 101 S. Ct. 1074 (1981); *Sambs v. City of Brookfield,* 97 Wis. 2d 356, 371, 293 N.W.2d 504 (1980); *Marmolejo v. DILHR,* 92 Wis. 2d 674, 682, 285 N.W.2d 650 (1979); *State ex rel. Niederer v. Cady,* 72 Wis. 2d 311, 321, 240 N.W.2d 626 (1976); *Harris v. Kelley,* 70 Wis. 2d 242, 251, 234 N.W.2d 628 (1975); Tribe, *American Constitutional Law,* Ch. 16 (1978); Gunther, *Forward: In Search of Evolving Doctrines on a Changing Court: A Model for a Newer Equal Protection,* 86

In determining whether a legislative classification meets the rational basis test, "a court should ask, first, what the purposes of the statute are, and, second, whether the classification is rationally related to the achievement of those purposes." *United States Railroad Retirement Board, supra,* 449 U.S. at 184 (Brennan, J., dissenting).

Because the statute and its legislative history are silent as to the legislative purpose, the majority hypothesizes two legitimate purposes which the majority says are effectuated by the legislature treating jury fees in small claims actions differently from jury fees in chs. 801–807 actions: (1) The imposition of the jury fee in small claims actions serves the legitimate state purpose of having the users of juries pay part of the added expense of jury trials; and (2) The imposition of a jury fee in small claims actions serves the legitimate state purpose of fostering a "summary disposition" for resolving small claims disputes.

*Defraying the Expense of Jury Trials.* The majority's first hypothesized legitimate state purpose (or justification) for the imposition of a jury fee in small claims actions but not in chs. 801–807 actions is that the users of the jury in small claims court should defray part of the jury expense and that, by charging a separate fee for a jury, other litigants in small claims actions who do not use juries have the benefit of a low suit tax. As the majority explains, "a fair allocation of the court's expenses was the basis for the separate assessment of the jury fee [in small claims actions]." *Supra,* p 480. In contrast, says the majority, in chs. 801–807 civil actions all litigants share the added expense of jury trials by paying higher suit taxes than paid in small claims court;

Harv. L. Rev. 1 (1972); Gunther, *Constitutional Law, Cases and Materials* Ch. 10 (10th ed. 1980).

the jury costs in chs. 801–807 actions are thus spread among all litigants whether or not they use the jury.

Certainly, having the litigant pay part of the added expense of a jury trial and keeping the costs of small claims actions as low as possible are legitimate state objectives. The question is whether the classification the legislature employs has rational relevance to the objectives. Or to state it in another way, the question is whether the objectives sought to be achieved constitute adequate justification for the classification. I conclude that the imposition of a jury fee in small claims jury trials only does not bear a rational relationship to the objectives hypothesized by the majority.

When parties in a small claims action request a jury, they pay the same suit tax as do the chs. 801–807 litigants. *See* sec. 799.21(3)(c), Stats., and majority opinion at page 473. Thus the small claims litigant who demands a jury shares, along with all other chs. 801–807 litigants, the increased costs of all jury trials via payment of the higher suit tax. Forcing the small claims litigant to pay a jury fee in addition to the higher suit tax imposes a greater burden on the small claims litigant who wants a jury trial than on the chs. 801–807 litigant who wants a jury trial. Yet the added expense of a jury trial in what started out as a small claims action is not greater than the added expense of a chs. 801–807 jury trial. The majority's hypothesized justification for imposing on the small claims litigant the $24 fee for using a jury is thus not persuasive when the statutory scheme is analyzed.

Judge Dykman, writing for the court of appeals, recognized that the jury trial of a small claims action is the same as a jury trial in an action commenced under chs. 801–807 and concluded that there is no rational justification for the legislature charging a fee for a jury trial in

one type of action but not charging in the other. Judge Dykman summarized the court's conclusion as follows:

"From the point at which a small claims litigant asks for a jury trial, his case is treated as though the action had initially been commenced as a proceeding under chs. 801 to 807, Stats. The costs of administering a jury trial are no greater in a case which began as a small claims action than they are in a case that was initiated under chs. 801 to 807. The same records must be kept. The same personnel must be employed. The same number of jurors must be paid. There is no greater burden to the state in providing a jury in small claims actions than there is in providing a jury in non-small claims actions. We can think of no legitimate state objective that is served by this legislative classification." (Notes omitted.)

To support its conclusion that there is a rational relationship between the classification and the objectives, the majority relies on *State v. Graf*, 72 Wis. 2d 179, 183, 240 N.W.2d 387 (1976). The majority's reliance on *Graf* is misplaced. *Graf* dealt with the issue of whether the equal protection clause is violated by the legislature imposing a larger suit tax in jury cases than in non-jury cases and requiring prepayment of this larger suit tax in jury cases but not in non-jury cases. *Graf* dealt with a legislative classification of jury and non-jury trials. The *Graf* court concluded that the disparate length of trial time and preparation time in jury trials as compared with non-jury trials justified assessment of a higher suit tax in jury trials than in non-jury trials. The *Graf* case did not reach the issue of whether equal protection is violated by the imposition of jury fees in a chs. 801–807 action which began in small claims and not in the other chs. 801–807 actions.

Distinguishing between small claims actions and other civil actions may be reasonable for certain purposes, but in the context of the existing statutes the distinction as

to jury fees has no relevance to the purposes set forth by the majority.

*"Summary Disposition."* The majority's second hypothesized legitimate state objective (or justification) for the imposition of a jury fee in small claims actions but not in chs. 801–807 actions is that the jury fee promotes the legislative objective of providing a "summary procedure" for resolving small claims disputes.

The majority describes the trial of a small claims action as "summary in nature," a "summary disposition," and a "summary procedure," which does not provide for "discovery, motions before and after verdict, pretrial conferences and other proceedings which absorb a large amount of the valuable court time." *Supra,* pp. 481–483. Though the majority never defines the word "summary," the majority apparently believes that a trial in a small claims action is summary in the sense that it is a quick, informal, and inexpensive proceeding. *Supra,* pp. 481–483. A jury trial in small claims court, according to the majority, would obstruct the "summary disposition" because a jury trial is time consuming, requires stricter adherence to the rules of evidence, and is expensive for the litigants. The majority concludes that imposition of a jury fee in a small claims action is a means of "insuring the sincerity of the party requesting a jury trial [and thus serves] the legislative objective of providing a summary procedure for resolving small claims." *Supra,* p. 481. The majority apparently reasons that the jury fee discourages "insincere" requests for a jury thereby increasing the likelihood of trial to the court and trial to the court in a small claims action is, according to the majority, a "summary disposition."

I believe the majority is mistaken in characterizing a trial to the court in a small claims action as "summary." If the trial to the court in a small claims action is not "summary," then fostering "summary disposition" or

"summary procedure" in small claims actions cannot be the objective of or justification for the challenged classification.

The majority's characterization of a trial to the court in a small claims action as "summary" does not comport with the Wisconsin statutes.[5] The majority correctly notes that the 1949 creation of the small claims court allowed for a summary disposition of small claims. The 1949 legislature specifically provided that "the practice and procedure of said small claims court shall be summary in its nature," sec. 254.07(1)(a), Stats. 1949. The judge of the small claims court was specifically empowered "to make such rules governing the practice and procedure . . . . as he may deem advisable to facilitate the disposition of matters coming before the court." Sec. 254.07(1)(c), Stats. 1949. The majority fails to point out, however, that in the 1961 court reorganization, the legislature eliminated the 1949 small claims court and established a new small claims procedure for small claims type actions in county court. Under the 1961 pro-

---

[5] Although advocates of the small claims court wanted to establish a court to resolve minor disputes among individuals, the small claims court in Wisconsin, as in other states, is apparently dominated by businesses and collection agencies and the small claims courts have not proved successful in providing speedy, inexpensive justice for individuals with minor disputes. *See* Bernstine, *An Empirical Study of the Dane County Small Claims Court* (L.L.M. Thesis, U. of W. Law School 1975); Poe, *Landlord-Tenant Use of Selected Small Claims Courts in Wisconsin, A Report to the Wisconsin Department of Agriculture, Trade and Consumer Protection* (A Report by the Center for Public Representation, Feb. 1979); Wis. Citizens Study Committee on Judicial Organization, *Court Availability Subcommittee Report*, 160–167, 177 (Oct. 1972); Purdum, *Examining the Claims of a Small Claims Court: A Florida Case Study*, 65 Judicature 25 (1981); Steele, *The Historical Context of Small Claims Courts*, 1981 A.B.F. Res. J. 293; Meyers, *The Pro Se Small Claims Court in Chicago: Justice for the "Little Guy"?*, 72 Nw. U.L. Rev. 947 (1978).

cedure, which is the basis of our present ch. 799 small claims procedure, the *trial* in a small claims action is no longer summary in nature. Boden, *Wisconsin Small Claims Practice Under Ch. 299; A Discussion and Some Suggestions*, 47 Marq. L. Rev. 38, 40, 48–50 (1963). Since 1961 the statutes expressly state that circuit court practice applies to small claims actions unless the small claims statute provides otherwise. The 1961 Small Claims Procedure Act did not, to any substantial extent, simplify the *trial* of small claims disputes; it simplified such matters as the summons, service, pleadings, entry of judgment, etc. *See* Ch. 299, Stats. 1961. As Dean Boden's article points out, as of 1961 the major differences between the *trial* of a small claims action and the *trial* in circuit court relate to the selection of six- and twelve-person juries and the waiver of a jury.

In 1977 a major revision of chapter 799 was enacted to provide for a more simple trial procedure so that individuals could use the small claims procedure more easily and without counsel.[6] The legislature provided that in counties with a population between 100,000 and 500,000—of which there are six in the state—a court

---

[6] Ch. 345, Laws of 1977. For an analysis of the small claims court and of ch. 345, Laws of 1977, see the following documents in the files of the Wisconsin Legislative Council, 147 North, State Capitol, Madison, Wisconsin, relating to Ch. 345, Laws of 1977: Analysis by the Legislative Reference Bureau to 1977 S.B. 467; Wis. Legisl. Council Staff Memorandum from Dan Fernbach, Senior Staff Attorney, to Speaker Edward Jackamonis re Ch. 345, Laws of 1977, dated May 24, 1978; Statement of the Milwaukee Junior Bar Association in support of 1977 S.B. 467 dated March 3, 1978; Statement of James D. Jeffries, Assistant Attorney General, Wisconsin Department of Justice, dated August 25, 1977, before the Senate Judiciary and Consumer Affairs Committee in support of 1977 S.B. 467; Statement of Liz Allen of the Governor's Council for Consumer Affairs dated August 25, 1977, before the Senate Judiciary and Consumer Affairs Committee in support of 1977 S.B. 467.

commissioner may be appointed to decide small claims actions; in Milwaukee county, a commissioner must be appointed to hear small claims matters. Secs. 799.206, 799.207, 757.68 (1) (b), 757.695, Stats. 1979–80. Under the 1977 amendments, if the small claims trial is before the court commissioner, there is a simplified and summary type of trial. The legislature has specifically prescribed that "the court commissioner may consider all relevant information and the proceedings shall not be governed by the rules of evidence." Sec. 799.207 (1) (c), Stats. 1979–80. Even if the commissioner hears and decides the case, the legislature has, however, carefully preserved the right to a trial of the small claims matter either to the court or by a jury. The court commissioner must instruct the parties and give them a form allowing them, after the commissioner renders a decision, to demand a new trial on all issues before the court or a jury. Secs. 799.207 (2) (b), (3), (4), (5), 799.21, Stats. 1979–80.

Thus as of 1981 the trial in a small claims action whether to the court or by jury is governed by the general rules of practice and procedure applicable in circuit court unless a specific statute provides otherwise; and few statutes provide otherwise. Thus sec. 814.025, Stats. 1979–80, relating to frivolous actions, applies to small claims court. *Hessenius v. Schmidt,* 102 Wis. 2d 697, 702, 307 N.W.2d 232 (1981). Ch. 804, relating to depositions and discovery, and chs. 901 through 911, the rules of evidence, apply to small claims trials whether to the court or by the jury. Sec. 911.01 (2), (4) (d), Stats. 1979–80.

Chapter 799, even after the 1977 amendments, still represents what Dean Boden characterizes as "a compromise between two schools of thought on the subject of small claims handling: (1) the advocates of a thoroughly informal, almost administrative type process; and (2)

the proponents of an essentially judicial approach with exceptions to circuit court practice as dictated by necessity." Boden, *supra* 47 Marq. L. Rev. at 40. The "compromise small claims procedure" the Wisconsin legislature adopted in 1961 is essentially that the informal administrative type process is used in the pleading stage of the small claims action while the formal judicial approach (with a few exceptions) is used in the trial stage of the small claims action. After the pleading stage, a small claims action and a ch. 801–807 action are, for purposes relevant to this case, the same under the Wisconsin statutes. Thus the parties are entitled to the same type of trial whether or not the action was initiated under the small claims procedure. In talking about summary disposition and summary procedure, the majority fails to recognize the distinction between the pleading stage and trial stage of a small claims action, a distinction clearly embodied in the small claims statutes.

In 1981, unlike in 1949 when the small claims court was created, the practice and procedure in the trial of a small claims action is not "summary in its nature," as the majority would lead us to believe. A request for a jury changes the nature of the small claims trial in much the same way as such a request would change the nature of the trial of a chs. 801–807 civil action. I recognize that generally a trial to the court takes less time and may be "more relaxed" than a trial by jury, but a trial to the court is not "summary in nature" in small claims actions any more than it is summary in nature in a chs. 801–807 action.[7]

---

[7] When judges in trials of small claims actions "relax the rules at trial," they find themselves in the uncomfortable position of adhering to that which some view as the spirit of the small claims procedure act and of not adhering to that which is the letter of the small claims procedure statutes. The judge sitting in small claims court may wind up reversed if he or she adheres to the spirit of the law or reversed if he or she adheres to the letter of

When the classification of small claims litigants demanding jury trials, as opposed to chs. 801–807 litigants demanding jury trials, is viewed in light of the overall scheme of the small claims statutes, it is not conceivable that the purpose of the classification was to promote "summary disposition" of small claims trials. As previously pointed out, a small claims trial to the court is not summary in nature. A court cannot hypothesize objectives of or justifications for a legislative classification in a vacuum. The court must at a minimum consider the legislative scheme in which that classification is embodied in determining the objectives of the legislature.

Although I conclude that a small claims trial to the court is not "summary in nature" and that the classification of small claims litigants with regard to jury fees cannot be justified on the ground of promoting "summary disposition" in small claims trials, I in no way mean to imply that I do not favor a more informal, less expensive, and faster system for the trial of small claims disputes. However, if we are to have such a system in Wisconsin, the legislature must enact it. It is not the role of this court to impose its view of what is good public policy by identifying a legislative purpose that is clearly not supported by the existing statutes.

I conclude that the legislative objective of the jury fee is not, as the majority claims, to increase the likelihood of a "summary disposition" of small claims trials. The only conceivable legislative objective of the jury fee in the context of the existing statutes is to discourage trial by jury in small claims actions. In the case at bar, the effect of the classification is the purpose of the classification and the purpose is not a legitimate state objective.

the law. *See Littleton v. Langlois*, 37 Wis. 2d 360, 155 N.W.2d 150 (1967). There has been significant criticism of the operation of the small claims court, *see* authorities cited in note 5 *supra*, but no solution has been divined.

In *La Bowe v. Balthazor,* 180 Wis. 419, 193 N.W. 244 (1923), this court clearly stated that it is not a legitimate state objective to discourage jury trials in cases involving minor sums of money. The court said:

"The municipal court was created, no doubt, for the laudable purpose of taking care of minor cases involving less than $1,000 efficiently and economically, and it was quite clearly the intention of the legislature to impose the high jury fee in order to discourage trials by jury. The public policy of the state, however, is determined by the constitution so far as jury trials are concerned, and the legislature is not permitted to circumvent the constitutional provision in order to even secure a better public policy. That can only be done by constitutional amendment. Manifestly, the municipal court will deal with the poorer classes of litigants, but these litigants are entitled to the same rights and privileges under the constitution as those of larger possessions." *Balthazor,* 180 Wis. at 423, 193 N.W. at 246.

The legislature cannot impose burdens on the constitutionally guaranteed right to a jury trial when the burdens fall peculiarly and without rational justification on selected litigants.

I conclude, as did the court of appeals, that there is no conceivable legitimate state objective which is rationally served by the legislature's classification. I would hold, as did the court of appeals, that the sec. 799.21(3) requirement that small claims litigants pay jury fees violates the equal protection clauses of the federal and state constitutions. I therefore dissent.

I am authorized to state that Chief Justice BRUCE F. BEILFUSS and Justice NATHAN S. HEFFERNAN join in this dissent.